USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  3/2/26 _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHENG SHENXIA,

                              Plaintiff,

        -against-

CITY OF NEW YORK, et al.,

                              Defendants.

1:24-cv-05082 (ALC)

OPINION & ORDER

ANDREW L. CARTER, JR., United States District Judge:

Plaintiff Sheng Shenxia is proceeding *pro se* in this action. Before the Court is Plaintiff's

motions for a preliminary injunction. ECF Nos 30, 35, 51, 56. For the reasons set forth below,

Plaintiff's motions are **DENIED**.

## BACKGROUND

### I.        Factual History

Plaintiff Sheng Shenxia, a resident of New York, New York, brings this suit on behalf of

himself, his three minor children and his wife against Defendants City of New York ("Defendant

City") and numerous other defendants. ECF No. 59 ("Second Amended Complaint" or "SAC").

Plaintiff brings this suit against Defendants for "systemic unconstitutional conduct, alleging

violations of the Fourth and Fourteenth Amendments to the United States Constitution." SAC at

13. Plaintiff alleges that the policies, customs, and practices of Defendant City, along with the

supervisory failures of Defendants Joslyn Carter (DHS Administrator) and Molly Park

(Commissioner of the Department of Social Services), directly violated his constitutional rights,

causing severe personal, psychological, and property damage to Plaintiff and his family. SAC at

14. Specifically, Plaintiff claims that when he and his family resided at 52 William St, Apt 706,

New York, NY 10005, a City-provided residence managed by Highland Park, they were

1

repeatedly subjected to unlawful searches, seizures, harassment, and discriminatory conduct. SAC at 15-16.

According to Plaintiff, Defendant City authorized, condoned, or failed to prevent these unconstitutional acts through their policies, customs, and practices. SAC at 16. Plaintiff claims Defendants Joslyn Carter (DHS Administrator) and Molly Park (Commissioner of the Department of Social Services) failed to adequately supervise DHS employees and their partner organizations such as Highland Park, enabling the unlawful searches, seizures, and discriminatory conduct. SAC at 16. Plaintiff further alleges Defendants Roger Prince and the unknown female shelter director named as Jane Doe directed nearly all unlawful entries and seizures, acting on behalf of High Park Community Development Corporation or the City of New York. SAC at 16.

As a result of these actions, Plaintiff alleges he and his family, including his pregnant wife and minor children, suffered severe emotional, psychological and physical harm. SAC at 32-33. Specifically, Plaintiff claims he suffers from depression, anxiety, post-traumatic stress disorder ("PTSD"), insomnia, nightmares, and physical injuries, rendering him unable to work or care for his children. SAC at 32-33. Plaintiff alleges his wife's injuries include emotional distress and harassment and nearly miscarrying due to the alleged assault during her pregnancy. SAC at 33. Plaintiff further claims his 8-year-old child's injuries include depression, social phobia, anxiety, PTSD, and severe impairment in social and academic functioning, and his 2-year-old child's injuries include autism, PTSD, speech delays, developmental impairments, weakened immunity, sleep disorders, and nightmares. SAC at 33. Last, Plaintiff alleges he suffered property loss or damage, including a computer, passports, money, household items, and personal belongings.

SAC at 33. Plaintiff's claims for relief include compensatory and punitive damages, injunctive relief, and a declaratory judgment that Defendants' actions were unconstitutional.

## II.    Procedural History

On July 7, 2024, Plaintiff filed his complaint initiating this action. *See* ECF No. 1. On April 20, 2024, Plaintiff filed an amended complaint. *See* AC. On December 19, 2025, Plaintiff filed a Second Amended Complaint. *See* SAC.

Plaintiff's Second Amended Complaint asserts five claims against the Defendants. SAC at 33-35. First, Plaintiff brings a claim against all Defendants for violation of the Fourth Amendment due to unlawful search and seizure. SAC at 33. Second, Plaintiff alleges Defendants violated the Fourteenth Amendment's Equal Protection Clause by targeting Plaintiff and his family based on their race and ethnicity and failure to ensure the agencies' policies, customs, and practices adhered to equal protection principles. SAC at 34. Plaintiff's third claim is a Municipal Liability- Monell Claim under 42 U.S.C. § 1983. SAC at 34. Plaintiff brings the Monell Claim against Defendants City and Highland Park, alleging their policies, customs, or practices directly caused the unconstitutional acts due to inadequate training and supervision of employees, as well as against Individual Defendants Joslyn Carter and Molly Park for directly contributing to the persistence of the unconstitutional acts. SAC at 34. Plaintiff's fourth claim is a New York State Law Assault and Battery claim against Defendants for physical assaults on he and his wife on September 29, 2024. SAC at 34. Lastly, Plaintiff's fifth claim is a New York State Law claim for Intentional Infliction of Emotional Distress resulting from Defendants' "repeated unlawful entries, harassment, and discriminatory conduct." SAC at 34-35.

On June 4, 2025, Defendant City filed a letter motion with the Court requesting leave to file its anticipated motion to dismiss. *See* ECF No. 29. On June 21, 2025, Plaintiff filed his first

emergency motion for a preliminary injunction. *See* ECF No. 30. In this motion, Plaintiff repeats his allegations that Defendant City's search and seizure policies violate the Fourth Amendment of the U.S. Constitution. ECF No. 30 at 1. Plaintiff's claim for relief is an order enjoining Defendants from "conducting warrantless and nonconsensual searches of private shelter rooms" and ordering them to revoke the administrative rules or other policies permitting such searches. *Id*. On June 25, 2025, this Court issued an order denying Plaintiff's request for the issuance of a Temporary Restraining Order and setting a briefing schedule as to Plaintiff's request for a Preliminary Injunction.  *See* ECF No. 33.

On July 2, 2025, Plaintiff filed his second request for preliminary injunctive relief. *See* ECF No. 35. In this motion, Plaintiff assets new allegations that Defendants illegally terminated his housing benefits and public assistance without due process of law, violating his fundamental rights to property and housing. ECF No. 35 at 1. Plaintiff's claim for relief is an order compelling Defendants to immediately issue FHEPS assistance to prevent imminent homelessness. ECF No. 35 at 1-2.

On November 19, 2025, Plaintiff filed his third request for preliminary injunctive relief. *See* ECF No. 51. In this motion, Plaintiff alleges that his child is a "federally protected homeless student and exhibits clear signs of emotional disturbance, anxiety disorder, depressive symptoms, trauma reactions, sleep disorders, and developmental delays" as a result of Defendants' actions alleges in the Amended Complaint. ECF No. 51 at 1. Plaintiff further claims that the New York City Department of Education ("DOE") failed to provide school transportation for more than a month, failed to complete the IEP evaluation for more than six months, has repeatedly refused to respond to Plaintiff's requests for services, and has failed to ever provide any written explanation or progress update. ECF No. 51 at 1. Plaintiff's claim for relief is an order compelling the DOE

to provide immediate school bus transportation, compete all IEP evaluations within 7 days, complete an IEP meeting within 10 days, and provide interim special educations services. ECF No. 51 at 2.

On December 5, 2025, Plaintiff filed his fourth request for preliminary injunctive relief. *See* ECF No. 56. In this motion, Plaintiff seeks court intervention due to alleged ongoing unlawful actions by Defendant City and its agents. ECF No. 56 at 1. Plaintiff alleges these actions include "(1) retaliatory instruction to label Plaintiff as a 'noncompliant and uncooperative parent'; (2) falsification of educational records; (3) unlawful removal from an IEP meeting; (4) denial of language-access services; (5) violations of IDEA; (6) violations of the Fourteenth Amendment; (7) violations of Title VI, Section 504 and 42 U.S.C. § 1983; and (8) denial of FAPE to Plaintiff's child. ECF No. 56 at 1. Plaintiff requests various forms of relief, including that the Court order Defendants to provide all required educational services,  protect the confidentiality of the child's information and record, order removal and prohibition of the false "noncompliant and uncooperative parent" designation, apply presumption of eligibility due to DOE's failure to complete timely evaluations, order immediate provision of multiple educational services, ensure future evaluations are not delayed or reduced, award compensatory education for all months since May 2025, order restoration of interpretation and translation services, and order Defendants to cease all retaliation. ECF No. 56 at 3.

## LEGAL STANDARD

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). "The standard for an entry of a TRO is essentially the same as for a preliminary injunction." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).

"Courts must afford *pro se* plaintiffs 'special solicitude'" in reviewing their filings. *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir.1994)). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## DISCUSSION

### I.   Preliminary Injunctive Relief

#### a.  Standing

Plaintiff moves for preliminary injunctive relief enjoining Defendant City and its agency, Department of Homelessness Services, from "conducting warrantless and nonconsensual searches

of private shelter rooms" and ordering it to revoke the administrative rules and other policies permitting such searches. ECF No. 30. As an initial matter, Defendant City argues Plaintiff does not have standing for this preliminary injunctive relief claim as Plaintiff "is neither a current resident of the shelter where the nexus of his allegations took place, nor is he a resident of any DHS shelter." ECF No. 38 at 2. Defendant City further alleges Plaintiff's request for preliminary injunctive relief is based on "mere allegations" and unsupported by evidence, failing to establish the elements of standing. *Id*.

Standing "is a federal jurisdictional question 'determining the power of the court to entertain the suit," and thus is a threshold matter. *See Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (internal quotations and references omitted). "Thus, in order to seek injunctive relief, a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). To establish standing for a preliminary injunction, "a plaintiff cannot rest on … mere allegations … but must set forth by affidavit or other evidence specific facts" that establish the elements of standing. *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

Although Plaintiff does not explicitly address standing, the Court construes Plaintiff's arguments to allege standing on the ground that the alleged search and seizures that occurred when Plaintiff resided inside the City-run housing at 52 William Street violated his Fourth Amendment right against unlawful search and seizure. *See* ECF No. 40 at 1. Nevertheless, Plaintiff acknowledged in his Amended Complaint, along with other court filings, that he no longer resides at 52 William Street as he was evicted from the shelter. *See* AC at 3 (stating his current resident is 127 Allen Street but that at the time of the allegations he resided at 52 William Street), ECF No.

35 at 1 (stating Defendants evicted Plaintiff and his family from the shelter on October 2, 2024), and ECF No. 40 at 3 (listing his current address at 127 Allen Street). Because Plaintiff does not currently live in a shelter, he is not affected by the Defendants' policies and practices regarding search and seizure being challenged here.  While Plaintiff does allege that he suffered injuries caused by Defendants' rules and other policies, any such injuries could not be redressed by the injunctive relief Plaintiff is asking the Court for. Put another way, even if the Court were to order Defendants to revoke the administrative rules and other policies permitting such searches, Plaintiff would not be affected by this change as he does not reside in the shelter system.  Accordingly, Plaintiff's request for the issuance of an injunction to revoke Defendants' administrative rules and other policies permitting searches in shelters is **DENIED**.

### b.  Plaintiff Has Not Adequately Demonstrated Irreparable Harm

One of Plaintiff's remaining preliminary injunctive relief claims is for an order compelling Defendants to immediately issue FHEPS assistance to prevent the irreparable harm of imminent eviction. Plaintiff fails to meet his burden to show irreparable harm in absence of this injunctive relief.

"To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

Defendants argue that the chance that Plaintiff may face eviction and homelessness is too speculative to establish irreparable harm. The Court need not address whether the prospect of eviction is speculative because in any event, the relief requested from Defendants can be addressed through monetary damages. *See Tellock v. Davis*, 84 F. App'x 109 (2d Cir. 2003) (finding that costs associated with eviction can be adequately compensated for with money damages). As such, the Court finds that Plaintiff has not shown he will suffer an irreparable harm between now and the conclusion of this matter. The preliminary injunctive relief requested from Defendants as to the issuance is FHEPS assistance is **DENIED**.

Similarly, Plaintiff also fails to meet the burden to show irreparable harm in the absence of injunctive relief as to his two remaining claims arguing that DOE failed to provide his child with services, such as school bus transportation, an IEP evaluation, and other academic services. *See* ECF Nos. 51, 56. Plaintiff's allegations of irreparable harm are speculative. While Plaintiff alleges that DOE's actions violated federal law and caused irreparable harm, Plaintiff fails to offer any substantiation as to how he was harmed or how the requested injunctive relief will cure the harm. *See id*. In order to establish irreparable harm, "a plaintiff must present the district court with actual evidence." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 673 (2d Cir. 2023). Plaintiff has failed to do so here. Accordingly, Plaintiff's requests for relief as to the issuance of additional services to his child including school bus transportation, an IEP evaluation, and other academic services is **DENIED**.

## CONCLUSION

For all of the above-stated reasons, Plaintiff's motions for preliminary injunctive relief are **DENIED**. Further, the Court notes that Plaintiff has made multiple applications that fall outside the scope of Plaintiff's allegations in this matter and directs Plaintiff to refrain from filing further applications that are not relevant to the scope of this matter.

Lastly, the Court **GRANTS** Plaintiff's request for leave to file an amended complaint. *See* ECF Nos. 61, 73. Plaintiff shall have one last opportunity to file an amended complaint which should be filed by **March 27, 2026**. Plaintiff's motions requesting relief at ECF Nos. 70, 72, and 74 are **DENIED** without prejudice as the Court has granted Plaintiff leave to amend. Defendants' request for a pre-motion conference regarding its anticipated motion to dismiss is hereby **DENIED**. *See* ECF No. 29. Defendants are **GRANTED** leave to file its motion to dismiss without a pre-motion conference by **April 17, 2026**. Plaintiff may file an opposition by **May 22, 2026**. Defendants' reply is due by **June 5, 2026.**

The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 29, 35, 51, 56, 61, 70, 72, 73, 74.

**SO ORDERED.**

**Dated:**      **March 2, 2026**
               **New York, New York**

_____

**ANDREW L. CARTER, JR.**
**United States District Judge**

10